

## Administrative Office of the U.S. Courts
### PACER Service Center

### Retrieve Password

**PLEASE PRINT THIS PAGE FOR YOUR RECORDS.**

You may use the PACER service now by clicking the OK button below. You will be issued a cookie that is valid as long as this browser remains open.

The password for sw3470 is Muvg2WG0

Note the following:

- There is a charge for accessing case information in PACER, RACER, and CM/ECF. Access to web based PACER systems will generate a $.08 per page charge.
- The per page charge applies to the number of pages that results from any search, including a search that yields no matches (one page for no matches.) The charge applies whether or not pages are printed, viewed, or downloaded.
- Usage is billed on a quarterly basis and a summary statement is mailed only if the account balance is $10 or more.
- If a credit card is provided at the time of registration, usage is billed on a quarterly basis automatically to the credit card submitted with this registration request for account balances more than $10. Balances less than $10 are deferred. These charges will be billed to the credit card mid February, May, August, and November. Electronic statements will be generated and sent via email. Paper statements will not be mailed.
- Quarterly bills not paid by the due date will result in a disruption of service for all open accounts for a firm, company, or address.
- If any part of the information provided to the PACER Service Center as part of this registration process is fraudulent, the account will be immediately disabled and all activity/ information may be turned over to law enforcement authorities.

| Top of Page |
| PACER Service Center Home Page |

*For information or comments, please contact:*

The PACER Service Center 

| | |
|---|---|
| 1 | STEVEN WHITWORTH, Esq. |
| 2 | LAW OFFICES OF STEVEN WHITWORTH |
| | 28 Boardman Place |
| | San Francisco, CA 94103 |
| 3 | Telephone number: 415 252 5900 |
| | Facsimile number: 415 252 5903 |
| 4 | Attorneys for Defendants |
| | Joshua Pratchard |
| 5 | |

UNITED STATES DISTRICT COURT

SAN FRANCISCO

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JOSHUA PRATCHARD

Defendants.

CASE NO. CR 08-00553-01

**DEFENDANT JOSHUA PRATCHARD'S SENTENCING MEMORANDUM**

Date: January 5, 2011
Time: 2:30 p.m.
Dept:
Judge: Maxine Chesney

**REQUEST AND JUSTIFICATION FOR COMPLETION OF PROBATION WITHIN THE PARAMETERS ORIGINALLY SET BY THE COURT IN OCTOBER OF 2009**

**I.      SUMMARY**

Probation has stated on the record that the halfway house probationer was residing in will accept him back. It is a viable option that should be imposed based on the following.

The event that the court violated Mr. Pratchard on his probation occurred over 12 months ago. Mr. Pratchard had not yet been admitted to his half way house when the event occurred.

1

ago. Mr. Pratchard had not yet been admitted to his half way house when the event occurred.

Subsequent to the December violation an interaction with two other persons at the halfway house occurred. From testimony given in open court it was very clear that Mr. Pratchard kept his composure after being hit in the face with great force and after being confronted by two persons intent on confrontation and escalation. Indeed the antagonist in the event was sent back to federal prison and invoked his United States Constitutional right under the 5th Amendment against self incrimination.

This second event happened subsequent to December 2009, the date of the of violation. This second event arguably shows the tremendous growth of Mr. Pratchard emotionally as well as Mr. Pratchard's ability to control emotions and de-escalate physical confrontations. Under the circumstances it is apparent Mr. Pratchard showed remarkable restraint and resolve.

It should also be noted that Mr. Pratchard was found not guilty by the community Court in Contra Costa County. No charges were contemplated by the Contra Costa District Attorney's Office over the arrest for public intoxication.

Mr. Pratchard in the interim has proactively sought anger management, quite literally saved an individual's life [see Exhibit 1.] Moreover, contrary to probations original assertion he has adhered to the payment structure presented by the court collections office [See Exhibit 2.]

Mr. Pratchard has a young son with which he desperately seeks to participate with and to remain a part of the young man's life.

Mr. Pratchard while on supervised release has remained gainfully employed. This will of course allow him to participate financially in the court's plan.

1 Mr. Pratchard is currently and continues to be up to date on his anger management classes.

3 Pratchard has kept gainfully employed in a very tough economy and with the stigma of being a
4 probationer imposed.

6 Mr. Pratchard has shown responsibility to society and an empathy to others in his actions and
7 interactions with the attempted suicide on September 1, 2010. [See Exhibit 1.]

9 II.  FACTUAL RESPONSE TO PROBATION NARRATIVE

11 Mr. Pratchard was sentenced to probation on October 21, 2009. The guideline range of 27-33
12 months was not used and the Court placed Defendant on a term of probation.

14 Mr. Pratchard had just been placed on probation and prior to his report date to his desiganted half
15 -way house when he was arrested for Public Intoxication.

17 Mr. Pratchard had consumed alcohol, there was a negative interaction with a bouncer at a bar, no
18 one was injured, Pratchard interacted with the police respectfully, no blood alcohol test was
19 submitted to Pratchard, he was released without supervision shortly after the incident. A likely
20 indication that he was not a danger to himself or others because of intoxication. One of the terms
21 of his probation at that time were to not to drink alcohol to excess.

23 It should be noted no charges were filed by the Contra Costa County District Attorney's Office
24 over this event. The case was submitted to the Community Court and Defendant was found not
25 guilty of any wrong doing by the trier if fact.

27 Probation and the United States Attorney seek to bring events that transpired ten years ago. An
28 event that occurred under United States Military jurisdiction and the Uniform Military Code in

1 | 2001. The culpability thresholds, adjudication, and evidentiary thresholds of which are different
2 | than either State or Federal Statutes. Again, the event occurred ten years ago. There are no other
3 | events of violence or "scrapes" with the law, nor are there any other convictions for any manner
4 | of any crime.

6 | Since the violating event over 12 months ago Mr. Pratchard has realized that alcohol does not
7 | allow him to operate or interact appropriately in all aspects of his life. Mr. Pratchard has taken
8 | steps to eliminate alcohol from his life.

11 | **[A] PROBATIONER IS AND HAS BEEN IN THE SPIRIT OF AND HAS ACTUALLY**
12 | **BEEN IN COMPLIANCE WITH ANGER MANAGEMENT CLASS ATTENDANCE.**

14 | Mr. Pratchard proactively asked to begin anger management classes. He was referred and began
15 | individual counseling on September 3, 2010. Until this point probation had not been able, or had
16 | not decided to send Mr. Pratchard to these meetings. Mr. Pratchard did this of his own volition
17 | because he knew he was ultimately responsible for these meetings. Until Mr. Pratchard reached
18 | out to probation there was no indication from probation as to the execution of this term of
19 | probation.

21 | When all parties appeared in Court on October 1, 2010, Pratchard had not missed any sessions
22 | that he had proactively sought without direction from probation or otherwise with his therapist.
23 | After that court date, he proceeded to "no show" for therapy on October 5, 2010 and October 12,
24 | 2010. Contrary to what probation offers Pratchard did contact the therapist, and did not "simply"
25 | fail to show.

27 | Mr. Pratchard is required to attend two meetings a week for anger management. The guidelines
28 | as to when a participant attends are not set in stone and can be fluid based on events that transpire

in the participants life, schedule, etc.

"Make-ups" for the anger management program Pratchard attends are common and accepted within the structure of the program that he attends.

To retaliate against Mr. Pratchard for actively seeking out anger management [of which he adhered to the terms and conditions and within the parameters of the program] seems counterproductive to rehabilitation generally and specifically as it relates to Mr. Pratchard.

Let's not forget that if / had Mr. Pratchard wanted to avoid anger management [ a term of his probation] he could have continued to wait for probation to refer him. He could potentially still be waiting for this referall but for his own action. His best action to avoid responsibility for the anger management would to have done nothing. This is not the case and his desire to take responsibility should not now be used against him.

Mr. Pratchard is currently and continues to be up to date on his anger management classes.

**[B] RESTITUTION:**

At all times Mr. Pratchard relied on invoices sent to him and payed the amounts requested.

To be clear Mr. Pratchard will sell his share in the boat as soon as he is able. He is working with and through counsel to do so. He has made attempts to rid himself of this financial burden.

Mr. Pratchard has a personal storage unit because he had no other place to store his personal items when his house was foreclosed on and he was residing and paying for the half-way house.

Pratchard was unable to pay both 25% of his gross income to the halfway house and make

1 payments on his single family home.

3 He made the payments to the half way house and thus lost his home to foreclosure. It should be
4 noted that the loss of the house also lessened Mr. Prathcard's ability to make restitution because
5 of lost equity in the house that could have potentially been used to make the victim whole.

7 Furthermore, there is a $50,000.00 state civil judgement currently accruing interest at 10% per
8 annum stemming from the civil suit filed by the victim in this case.

10 Mr. Pratchard's priorities are and have been on supporting his child and paying restitution to the
11 victim in this case. He also has legal responsibilities under contract law for the boat and the
12 personal storage.

14 Surely Probation does not suggest that Pratchard create more civil liability for himself and thus
15 more debt by unilaterally breaching contracts to which he was a party to prior to the unfortunate
16 event.

18 If Probation is suggesting that Pratchard walk away from contractual obligations in an
19 unreasonable and / or unlawful way this attorney feels that is at the very least an inappropriate
20 request and an unlawful demand.

22 Pratchard has and will take action to become a lean fiscally. The real key, clearly, if Probation is
23 actually significantly worried about restitution is to allow and help Pratchard in keeping his full
24 time salaried position that includes benefits for himself and his young son, and an income that
25 may actually allow the victim to be made whole in a comparatively small amount of time.

1    III.    RECOMMENDATION FOR SENTENCING FROM DEFENSE

2 The following is requested because it will facilitate restitution to the victim. Mr. Pratchard will
3 remain employed. Which should not be overlooked as trivial considering most probationers that
4 face the criminal justice system never have jobs that actually allow them to potentially pay
5 restitution.

7 Furthermore. Mr. Pratchard will be able to continue to interact with his young son and continue
8 to increase his presence both physically and financially in his young man's life.

10 Thus, it is respectfully suggested that Mr. Pratchard have the following sentence imposed. The
11 term of probation is hereby revoked and subsequently reinstated and the defendant shall be
12 placed on supervised release for a period of 36 months off set by any current credit of time to
13 date.

15 Probationer is to be placed back in to his old half way house for up to [9] nine months thus
16 fulfilling and or surpassing the original sentence of 12 months. Of which approximately half has
17 been done to date.

19 While on supervised release, the defendant shall not commit another Federal, State, or local
20 crime, shall comply with the standard conditions that have been adopted by this Court, shall
21 refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days
22 of release on supervised release and two periodic drug tests thereafter, and shall comply with the
23 following additional conditions:

25 1. The defendant shall not consume alcohol and shall not frequent establishments where alcohol
26 is the primary item for sale. AGREED

28 2. The defendant shall participate in an anger management program, as directed by his probation

officer, until such time as the defendant is released from the program by the probation officer. AGREED

3. The defendant shall not open any new lines of credit and/or debt without prior permission of the probation officer. AGREED

4. The defendant shall participate in a program of testing and treatment for drug/alcohol abuse, as directed by the probation officer, until such time as the defendant is released from treatment by the probation officer. The maximum number of urinalysis tests administered each month (whether by a treatment provider or the U.S. Probation Office) shall not exceed eight (8) tests per month. The defendant is to pay part or all of the cost of this treatment, at an amount not to exceed the cost of treatment, as deemed appropriate by the probation officer. Payments shall never exceed the total cost of urinalysis and counseling. The actual co-payment schedule shall be determined by the probation officer. AGREED

5. The defendant shall provide the probation officer with access to any financial information, including tax returns, and shall authorize the probation officer to conduct credit checks and obtain copies of income tax returns. AGREED

6. The defendant shall submit his person, residence, office, vehicle, or any property under his control to a search. Such a search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches. AGREED

7. The defendant shall not be in the vicinity of Derek Sanders, except during required Court appearances, unless otherwise approved by the probation officer. AGREED

8. The defendant shall cooperate in the collection of DNA as directed by the probation officer.
AGREED

9. The defendant shall pay restitution in the amount of $19, 516 as originally ordered by the Court on October 21, 2009 . The offender shall pay no less than 15% per month of his net earnings towards this restitution.

10. It is requested that probation allow Prathcard full access to his work schedule. Pratchard's work schedule is sometimes extended and not regular. However, it an be easily monitored and supervised with interaction with the employer and probation.
\

This will of course facilitate restitution, child support, and allow Pratchard a positive outlet and use of his time.

Again, it is not common for probationers to have jobs that will allow them to facilitate restitution and to create a positive avenue for the future. Pratchard can do both if allowed to keep his job and facilitate the needs of his employer.

It is clearly more likely that Pratchard will remain productive if allowed to keep his current job not only currently but also after he has placed this event and term of probation behind him.

[A] VOLUNTARY SURRENDER:

The defendant has kept all court appearances. The defendant is viewed as a good candidate for voluntary surrender by probation. Defendant respectfully requests future a self-surrender date to the halfway house proposed above.

Respectfully submitted,

_____

Steve Whitworth, Esq.
Attorney for Defendant
Joshua Pratchard